United States District Court
Middle District Of Florida
Orlando Division

Robert Lewis Morgan #13829-104
Petitioner/

V.

Warden, FCC Coleman-Low, Kathy Lane
Defendant/

5:20-cv-553-Oc-78PRL

Case No. 16-CR-20652-UU

## Petition For A Writ Of Habeas Corpus

### Statement of Jurisdiction

This Court has the power and jurisdiction to grant a Writ under 28 U.S.C. § 2241(a).

### The Motion

Petitioner asserts that he is authorized to bring this petition under 28 U.S.C. § 2241(c)(3), Whereas, Petitioner is in custody in violation of the Constitution and laws of the United States, and he has not been determined as an enemy combatant by the United States.

①

## 28 U.S.C. §2255(e)

Petitioner asserts that Section §2255(e)'s authorization requirement does not apply to motions filed under Section §2241. See *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998)(stating "Section 2255... does not add §2241 to the list of covered sections."). Alternatively, §2255 is ineffective and inadequate to test the legality of my detention, in that, Petitioner's motion seeking relief on grounds concerning the execution, and not the validity of the conviction and sentence, may not be brought under §2255, and therefore falls into the domain of §2241." *Valona*, 138 F.3d 693 (7th Cir. 1998) quoting *United States v. Addonizio*, 442 U.S. 178, 185-86, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979).

## Relief Sought

Petitioner seeks to have this case remanded and tried before a jury.

## Grounds for Relief

Petitioner should be granted the relief sought because my sentence is being executed in violation of the Constitutions' due process clause, in that, Petitioner was indicted, prosecuted, and sentenced on evidence and information that


②

was obtained in violation of the Fourth Amendment.

## Statement of the Facts

1. On or about May 16, 2016, United States Customs Agents intercepted a parcel from China that contained APVP. A schedule I analogue controlled substance. The parcel was addressed to Albert Johnson.

2. On May 24, 2016, Homeland Security Investigations conducted a "controlled delivery" of the parcel. Prior to this controlled delivery, the illegal APVP was replaced with a "sham" substance.

3. During the "controlled delivery" law enforcement made contact with an individual who was behind a concealing fence who stated that Albert Johnson was his cousin and that Johnson was not at the residence.

4. The individual then signed for and accepted Johnson's parcel over the top of the concealing fence.[1] The individual signed with the name Robert Morgan ("Petitioner").

5. Approximately 90 minutes later, an individual not known to the investigation, exited the residence, entered a vehicle and drove away.

---

[1] See Exhibit "A". Photos of the "controlled delivery".

(3)

6. The individual was followed by law enforcement to a residence in Fort Lauderdale, Florida. Upon arriving at the residence, the individual was observed entering the residence, and shortly thereafter, exiting the residence and re-entering his vehicle and driving away.

7. Law enforcement conducted a "traffic stop" on the individuals vehicle where he was forceably removed from his vehicle at gunpoint, handcuffed, and detained in the rear seat of an agents car. A search of the individual and his vehicle did not uncover the sham parcel or any other contraband.

8. During the detention in the rear seat of the agents' car, law enforcement coerced the individual, now identified as Robert Morgan, into confessing to ordering the APVP from China. He also confessed to using his cell phone to order the APVP.

9. Based on these confessions, law enforcement seized Petitioners cell phone and subsequently searched it. Wherein, they discovered e-mails sent from Petitioners' phone to someone in China discussing payment and shipping instructions concerning the APVP.

(4)

10. Based on this evidence and information, Petitioner was indicted and prosecuted for "Knowingly" conspiring to import a controlled substance, aggravated identity theft, and money laundering, in violation of 21 U.S.C. § 963, 18 U.S.C. §§ 1028A(a)(1) and 1956(a)(2)(A).

11. In November 2016, under his defense counsel's advice and assistance, Petitioner pled guilty to the charges. Petitioner was sentenced to 175 months in federal prison.

12. Petitioner now moves this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## ISSUE

Petitioner Was Denied Due Process Of Law By Being Indicted, Prosecuted, And Sentenced On Evidence And Information That Was Obtained In Violation Of The Fourth Amendment Of The United States Constitution.

"The Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112

S.Ct. 475, 116 L.Ed.2d 385 (1991).

Petitioner contends that by the Government using unlawfully obtained information, and evidence to indict, prosecute, and subsequently sentence him, violated the constitutions' due process guarantee to fundamental fairness.

## ARGUMENT

(a). The traffic stop conducted on Petitioner's vehicle was violative of the Fourth Amendments protection against unlawful seizures.

As stated earlier, law enforcement conducted a traffic stop on Petitioner's vehicle after he left the Fort Lauderdale residence. Petitioner contends that this stop was violative of the Fourth Amendment whereas, it was conducted absent probable cause or reasonable suspicion.

"The Fourth Amendment prohibits 'unreasonable searches and seizures." U.S. Const. amend IV. Consistent with the Fourth Amendment, an officer may conduct a brief, investigatory stop where the officer has a "reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 675 (2000).

"The Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." Wardlow, 528 U.S. at 123-24, 120 S. Ct. at 676.

The undisputed facts in this case concerning the traffic stop, establish that law enforcement did not have a reasonable, articulable suspicion of criminal activity when they stopped Petitioner's vehicle. At the time law enforcement stopped Petitioner's vehicle, they were aware of the following facts concerning Petitioner:

(1) he was observed exiting the residence where a parcel of "sham" had been delivered;

(2) he was observed entering a vehicle that was parked at the residence; and

(3) he was observed driving to, entering, and exiting a residence in Fort Lauderdale, Florida.

These facts does not rise to a level of reasonable suspicion or probable cause to

(7)

believe that Petitioner had ordered, or had knowledge of the ordering of, the APVP from China to conduct the "traffic stop" of Petitioner's vehicle and his detention. See United States v. Mcleroy, 584 F.2d 746 (5th Cir. 1978).

In McLeroy, law enforcement received information that McLeroy was in possession of a stolen vehicle. Law enforcement was also informed that McLeroy might be in possession of a sawed-off shotgun. Two officers acted on the information and drove to McLeroy's house. While surveilling his residence, McLeroy was observed exiting his residence, entering the car and driving away. The officers followed McLeroy and stopped him. They searched the vehicles identification number and established that the car was stolen. After conducting a search of the vehicle, a sawed-off shotgun was discovered. McLeroy was tried and found guilty of unregistered possession of a sawed-off shotgun. McLeroy appealed. The court of appeals vacated his conviction, holding that the police did not comply with U.S. Const. amend. IV when they made the investigatory stop. The court also determined that none of McLeroy's actions observed by the police were suspicious, and the only information of criminality came from the informant's tip. The court concluded that was insufficient to create a reasonable

suspicion of criminality.

Just as in <u>McLeroy</u>, the following events occured in Petitioner's case:

(1). Law enforcement became aware of a crime;

(2). They surveilled a residence;

(3). They observed an individual exit the residence, enter a vehicle, and drive away; and

(4). They stopped the vehicle. Whereas, the former Court of Appeals has determined that these actions did not rise to the level of reasonable suspicion to make an investigatory stop of a vehicle, the evidence obtained during and after the stop, was the products of an unconstitutional stop and was inadmissable.[2]

Thus, being that the evidence and information obtained by law enforcement were products of an unconstitutional "traffic stop", and was used to indict, prosecute, and sentence Petitioner,

---

[2]. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

(9)

Petitioner asserts that the execution of his sentence, by Warden Kathy Lane at FCC Coleman-Low, is in violation of the Constitution's due process clauses and the Fourth Amendment.

Petitioner prays that this Honorable Court grant this petition for a writ of habeas corpus, whereas, Petitioner has shown that he is in custody in violation of the Constitution and laws of the United States, as required for relief under 28 U.S.C. § 2241(c)(3).

(b). This petition for a writ of habeas corpus must be granted because there is a need to correct a fundamental miscarriage of justice.

A federal court may grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). This exeption is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exeption concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559, 140 L.Ed.2d 728, 118

S. Ct. 1489 (1998); Murray v. Carrier, 477 U.S. 478, 495-96, 91 L.Ed. 2d 397, 106 S. Ct. 2639 (1986). To meet this standard, a petitioner must show that "any rational trier of fact could not have found the elements of the crime beyond a reasonable doubt." Lewis v. Jeffers 497 US 764, 111 L.Ed. 2d 606, 110 S.Ct. 3092 (1990).

Petitioner asserts that there is a need to correct a fundamental miscarriage of justice where a violation of the Sixth Amendments guarantee to effective assistance of counsel has resulted in the conviction of someone who is actually innocent of "knowingly" violating 21 U.S.C. § 963, 18 U.S.C.S. § 1028A(a)(1), and 18 U.S.C.S. § 1956(a)(2)(A).

### Factual Background [3]

1. Petitioner was indicted for "knowingly" conspiring to import a controlled substance. Subsequently, Petitioner hired defense counsel Paul D. Petruzzi to represent him in the proceedings.

2. During consultation, Petitioner informed Counsel Petruzzi of the fact that he was unaware of the fact that APVP was a controlled substance.

---

3. These facts are supported by Petitioners Affidavit.

(11)

3. Aware of these facts, Counsel Petruzzi advised, assisted, and coaxed Petitioner into falsely pleading guilty to "knowingly" committing these offenses.

Petitioner asserts that by Counsel Petruzzi advising, assisting, and coaxing Petitioner into falsely pleading guilty to "knowingly" committing acts that counsel knew his client did not "knowingly" commit, constitutes ineffective assistance of counsel at a critical stage in the proceedings.

### Ineffective Assistance of Counsel

"Claims of ineffective assistance of counsel are governed by the two-pronged standard announced in Strickland v. Washington, 466 US 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two components of an ineffectiveness claim under Strickland are performance and prejudice. The focus of inquiry under the performance prong is whether counsel's actions was reasonable considering the circumstances. Id. at 691. As to the prejudice prong of Strickland, the defendant must show, by a preponderance of the evidence, that but for counsel's errors, the result of the proceedings would have been different. Id. at 694.

### (i) Performance

As Petitioner's Supporting Affidavit shows: At the time Counsel Petruzzi advised, assisted, and coaxed Petitioner into falsely pleading guilty to "knowingly" committing these offenses, he was aware of the fact that Petitioner did not know that he was dealing with "a controlled substance."

In light of this fact, Petitioner contends that Counsel's actions were unreasonable, considering the fact that Counsel Petruzzi, was in fact, advising and assisting his client into committing perjury before the court. Petitioner has met the performance prong of Strickland.

### (ii) Prejudice

As Petitioner's Supporting Affidavit shows: Had Petitioner not been misadvised and misled into ~~────~~ committing perjury before the court by falsely pleading guilty to "knowingly" committing these offenses, Petitioner would not have plead guilty and instead, Petitioner would have insisted on proceeding to trial. Petitioner has met the prejudice prong of Strickland.

### (iii) Actual Innocence

As Petitioner's Supporting Affidavit shows: Petitioner is actually and factually innocent of "knowingly" conspiring to import "a controlled substance", in light of the fact that Petitioner was unaware of the fact that the APVP that was being imported, was an analogue schedule I controlled substance, as required by the Supreme Courts ruling in McFadden v. United States, 576 U.S. 186, 135 S.Ct. 2298, 192 L.Ed. 2d 260 (2015). Petitioner has shown that he is actually innocent of "knowingly" conspiring to import "a controlled substance."

Petitioner asserts that by showing that a violation of the Sixth Amendment's guarantee to effective assistance of counsel has resulted in the conviction of someone who is actually innocent of "knowingly" conspiring to import "a controlled substance," he has shown that a fundamental miscarriage of justice exists in this case, that needs to be corrected. Thus, Petitioner prays that this Honorable Court corrects this fundamental miscarriage of justice.

### Hearing

Petitioner requests that a hearing date be set on this Petition, not more than five days after the return of the order to show cause, as mandated

Under 28 U.S.C. §2243.

## Supporting Papers

This Petition is based on this document, the attached "Photos of the controlled delivery", the attached Affidavit of Robert Lewis Morgan, all of the papers and pleadings on file in this action, and on whatever evidence and argument may be allowed at a hearing on this petition.

## Declaration Under Penalty Of Perjury

I declare under penalty of perjury that I am the petitioner and the information in this petition is true and correct, and that this petition was placed in the prison mail system on November 10th, 2020.

Dated: 11/10/20

By: Robert Lewis Morgan
(Petitioner - Pro Se)

(15)

Affidavit Of Truth

Affidavit of Robert Lewis Morgan
(Petitioner)

I, Robert Lewis Morgan, deposes and state:

1. I am Robert Lewis Morgan and I am over 18 years of age. I am the Petioner and I am fully competent to make this affidavit, and I have personal knowledge of the facts stated in this affidavit.

2. At the time the APVP was ordered and imported into the United States, I was unaware of the fact that APVP was a controlled substance.

3. At the time of the traffic stop, I did not commit any traffic violation.

4. I informed Counsel Petruzzi of these facts prior to him advising and assisting me to plead guilty to "knowingly" conspiring to import a controlled substance.

5. Counsel Petruzzi coaxed me into pleading guilty by telling me that there was no defense in my case, and that my only

alternative was to plead guilty and hope for a lenient sentence.

6. Had Counsel Petruzzi not advised, assisted, and coaxed me into falsely pleading guilty to "knowingly" committing these offenses, I would not have pled guilty or signed the factual proffer, and instead, I would have insisted on proceeding to trial, whereas, I am actually innocent of "knowingly" conspiring to import "a controlled substance.

I declare under penalty of perjury that all of the foregoing statements are true and correct.

Dated: 11/10/20

By: Robert Lewis Morgan
(Affiant - Pro Se)